UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                        Case No. 16-CR-197-WED-PP

ANTOINE T. RICHMOND,

        Defendant.

### REPORT AND RECOMMENDATION

Currently before the court is defendant Antoine T. Richmond's motion to suppress evidence. (ECF No. 20.) The parties stipulated to a factual statement for purposes of pretrial motions (ECF No. 18), but the court also held an evidentiary hearing on March 31, 2017. (ECF No. 28.) The matter being fully briefed (ECF No. 20, 22, 23) is ready for resolution.

### Facts

At about 11:40 p.m. on October 11, 2016, Milwaukee Police Officers Anthony Milone and Chad Boyack were traveling east on W. Vienna Ave. in Milwaukee in a marked, Milwaukee Police Department squad car when they observed a subject walking alone on the sidewalk. (ECF No. 18 at 1.) The individual was later identified as Richmond. (*Id*.) The officers saw Richmond's right hand in his kangaroo pouch front

shirt pocket. (*Id*. at 1-2.) Both officers testified that Richmond's kangaroo pocket had a significant bulge and Officer Boyack saw an object protruding outward from the pocket. (*Id*. at 2.)

After passing Richmond, Boyack performed a U-turn on W. Vienna Ave. and parked in front of 1933/1935 W. Vienna Ave. (*Id*.) The officers observed Richmond walk quickly across the front lawn of 1933/1935 W. Vienna Ave. and onto the porch of the duplex. (*Id*.) The entrance to each residence of the duplex is on the left side of the porch. The porch lights were on. (*Id*.)

Both officers got out of the car as Richmond approached the front door of 1933 W. Vienna Ave. (*Id*.) From about 20 or 25 feet away, Boyack saw Richmond open the screen door with his left hand, bend down, and place a "dark colored object" behind the screen door. (*Id*.) Both officers suspected the object was a gun. (*Id*. at 2-3.) The outer screen door has a see-through glass or plastic material at the top of the door, see-through mesh material in the middle section, and an aluminum or plastic material that is not transparent at the bottom portion of the door. (*Id*. at 3.)

As Richmond closed the screen door and turned around, the officers arrived at the front porch. (*Id*.) Richmond did not attempt to run or go into the house. (*Id*.) Officer Milone walked behind Richmond, opened the screen door of 1933 W. Vienna Ave., and saw a black, semi-automatic handgun. (*Id*. at 4.) Officer Milone testified that he could only open the screen door partially without hitting Richmond in the back. In other words, Richmond was within the swing radius of the screen door at the time Milone

looked behind it. According to Richmond, Officer Boyack asked him (1) if he heard shots; (2) if he had a weapon on him, and (3) what he was doing there. (*Id*.) Richmond responded that he had not heard shots, did not have a weapon on him, and that the home was his girlfriend's house.[1] (*Id*.) Richmond says that Officer Boyack also asked him for his ID and that Richmond gave it to him. (*Id*.)

After Officer Milone found the gun behind the screen door and had alerted Officer Boyack to its presence using coded language, Officer Boyack asked Richmond if he was a felon, to which Richmond responded that he was. (*Id*.) The officers then placed Richmond into custody. (*Id*.) The entire encounter, from the time the officers made their first observations to the time they approached the door and saw the weapon, lasted about twenty to thirty seconds. (*Id*.)

## **Analysis**

Richmond contends that the officers had neither probable cause nor reasonable suspicion to approach him at 1933 W. Vienna Ave. He argues that, while officers were allowed to approach the porch under the same implied license given to any citizen, the "social norms that invite a visitor to the front door do not invite him there to conduct a search." *United States v. Jardines*, 133 S. Ct. 1409, 1416 (2013). The area inside the screen door constituted curtilage and the Fourth Amendment protected it as part of the home

---

[1] 1933 W. Vienna Ave. is the residence of Richmond's girlfriend, Candice Conner, and Richmond had been staying there from September 2016 until his arrest on October 11, 2016. (ECF No. 18 at 13.)

3

itself. Because the officers did not have a warrant to search behind the screen door, "all evidence and derivative evidence" should be excluded.

The government first argues that the officers had probable cause to arrest Richmond and their search of the screen door occurred incident to a lawful arrest. It contends that probable cause existed for the officers to believe that Richmond possessed a firearm illegally based on their observations of (1) an object protruding from his front pocket, (2) Richmond moving quickly away from them when the officers made their U-turn, and (3) Richmond concealing a medium-sized, dark object between the screen door and the front door. According to the government, that the search occurred *before* the arrest is inconsequential because probable cause for the arrest existed independently of the evidence discovered during the search. *See United States v. Leo*, 792 F.3d 742, 748 n.1 (7th Cir. 2015) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 111 n. 6 (1980)).

But even if the officers did not have probable cause to arrest Richmond, the government asserts that officers had reasonable suspicion to conduct a *Terry* stop and perform a limited search for a dangerous weapon. *See Terry v. Ohio*, 392 U.S. 1, 23 (1968). Because an officer with reasonable suspicion is allowed to conduct a protective search for weapons in the area within the subject's control, the officers were justified in checking behind the screen door for what appeared to be a firearm placed there by Richmond. Thus, the discovery of the gun was lawful and the motion to suppress should be denied.

4
Case 2:16-cr-00197-PP    Filed 04/06/17    Page 4 of 10    Document 31

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated… ." U.S. Const. amend. IV. "Warrantless searches are *per se* unreasonable under the Fourth Amendment unless one of few recognized exceptions applies." *Leo*, 792 F.3d at 748 (citing *Riley v. California*, ----U.S. -----, 134 S. Ct. 2473, 2482 (2014)). Here, the government argues that two exceptions apply: (1) the officers searched Richmond's screen door as a search incident to arrest; and (2) the officers searched the screen door as permitted under *Terry v. Ohio*, 392 U.S. 1 (1968).

"[A] search that occurs before an arrest may be deemed lawful as incident to that arrest, so long as probable cause for an arrest existed independently of the evidence discovered during the search." *Leo*, 792 F.3d at 748, n.1 (citing *Rawlings*, 448 U.S. at 111). Probable cause exists when "at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see also Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010) ("[probable cause] exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred.").

Before the officers found the gun behind the screen door they did not have probable cause to arrest Richmond. The only facts upon which the government bases its argument that probable cause existed are that officers had observed Richmond quickly

5

move toward a porch and place an unknown object behind the screen door. They did not know whether the object was a gun or whether Richmond resided at the subject residence. Even if their suspicion that the object was a gun was correct, they had no basis for concluding that Richmond's possession of a gun was unlawful. They did not discover that he was a felon until they asked him—which was after they found the gun. Thus, the evidence that is the subject of this motion is not admissible as seized incident to a lawful arrest.[2]

The next question is whether the search was justified under *Terry*. "For an investigatory stop, police officers do not need probable cause. They need only have reasonable suspicion supported by articulable facts that criminal activity is afoot." *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000) (citing *Terry*, 392 U.S. at 30). "A *Terry* investigative stop is a brief detention which gives officers a chance to verify (or dispel) well-founded suspicions that a person has been, is, or is about to be engaged in criminal activity." *Leo*, 792 F.3d at 751 (quoting *United States v. Bullock*, 632 F.3d 1004, 1014-15 (7th Cir. 2011)). Reasonable suspicion is less than probable cause but is nevertheless "some objective manifestation that the person stopped is, or is about to be,

---

[2] At the close of the evidentiary hearing the government argued that the gun may be admissible under the doctrine of inevitable discovery. "The doctrine of inevitable discovery provides that illegally obtained evidence will not be excluded if the Government can prove, by a preponderance of the evidence, that the officers 'ultimately or inevitably would have … discovered [the challenged evidence] by lawful means.'" *United States v. Marrocco*, 578 F.3d 627, 637 (7th Cir. 2009) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). But "[t]o obtain the benefit of the doctrine, the government must show a chain of events that would have led to a warrant or some other justification independent of the unlawful search." *United States v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010). The government failed to make such a showing at the hearing and thus no factual basis exists for finding that the evidence is admissible for that reason.

engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). Moreover, "[a]n officer may search a suspect for weapons on [his] person or within [his] control during a *Terry* stop so long as 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *United States v. Askew-Bell*, 306 F. App'x 292, 295 (7th Cir. 2009) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)); *see also Cady v. Sheahan*, 467 F.3d 1057, 1061-62 (7th Cir. 2006)

"The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable… ." *Adams v. Williams*, 407 U.S. 143, 147 (1972). In extending the scope of *Terry* protective searches to the passenger compartment of vehicles, the Supreme Court said:

> [W]e stress that a *Terry* investigation, such as the one that occurred here, involves a police investigation 'at close range,' *Terry, supra,* 392 U.S., at 24, 88 S.Ct., at 1881, when the officer remains particularly vulnerable in part *because* a full custodial arrest has not been effected, and the officer must make a "quick decision as to how to protect himself and others from possible danger …." *Id.,* at 28, 88 S.Ct., at 1883. In such circumstances, we have not required that officers adopt alternate means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter.

*Michigan v. Long*, 463 U.S. 1032, 1052 (1983). Citing officer safety as rationale, other circuits have extended *Terry* searches to areas within the immediate control of the subject. *See United States v. Thompson*, 354 F.3d 1197, 1201 (10th Cir. 2003) (opening a bag at the feet of defendant was permissible because "[the officer]'s actions were 'reasonably related in scope to the circumstances which justified the interference in the

first place'" and "were limited to what was needed to seize the weapon discovered during his investigation of a potentially dangerous suspect.") (quoting *Terry*, 392 U.S. at 20)); *United States v. Johnson*, 637 F.2d 532, 536 *(*8th Cir. 1980) ("accessibility of weapon to defendant who was being patted down within three or four feet of the duffel bag brought it within his immediate control" and because "[t]he purpose of the search and seizure was protective[,]" and "the safety of the officers and others might well be endangered," "[t]he limited intrusion of removing the weapon from the duffel bag was warranted under the circumstances.").

In *United States v. Leo*, 792 F.3d 742 (7th Cir. 2015), the United States Court of Appeals for the Seventh Circuit Court found a Fourth Amendment violation because officers conducted a search *outside* the subject's "immediate control." Officers had stopped Leo and his co-defendant in a parking lot. *Id.* at 744-45. Leo had a backpack that officers took and placed on the ground. *Id*. at 745. The Court held that the search could not be justified under the *Terry* rationale because

> [A]t the time of the search in this case, Leo's hands were cuffed behind his back (as were [co-defendant]'s), the officers already had frisked both men and found no weapons, and the backpack was in [the officer]'s hands and no longer in Leo's possession. So when [the officer] unzipped and emptied the backpack, it was inconceivable that either Leo or [co-defendant] would have been able to lunge for the bag, unzip it, and grab the gun inside.

*Id.* at 750. Thus, "'on the basis of the facts as they existed at the time' of the search" the officer did not have "a reasonable belief that Leo could get 'immediate control' of the gun in his backpack." *Id*. (quoting *United States v. Jacobsen*, 466 U.S. 109, 115 (1984)).

8

Here, prior to searching behind the screen door, the officers observed Richmond quickly cut across the yard toward a home as soon as they drove by. It was 11:40 p.m. Boyack saw a dark object protruding from Richmond's kangaroo pocket that the officers suspected was a gun. They did not know whether Richmond had a permit allowing him to lawfully carry a concealed weapon. The officers then saw Richmond go up the steps to the home and conceal the object behind the screen door. They did not know whether Richmond lived at the house or not. These facts collectively gave the officers the reasonable suspicion necessary for an investigatory *Terry* stop.

As part of their *Terry*-stop procedure, the officers were allowed to take reasonable steps to ensure their safety, which included searching the area within Richmond's control. At the suppression hearing Officer Milone testified that Richmond was close enough to the screen door that he (Milone) could only partially open the door to see what Richmond placed behind it. Richmond was not in handcuffs or otherwise restrained. As such, the area behind the screen door was within his immediate control.[3] And because both officers suspected that the object placed behind the screen door was a gun, *Terry* permitted the officers to search behind it to ensure their safety. *See Terry*, 392 U.S. at 24 ("[I]t would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."). As oft-noted, the "central requirement"

---

[3] Officer Boyack testified that Richmond walked away from the screen door, actually coming down a few steps from the porch, to answer Boyack's questions. That testimony is not inconsistent with Milone's testimony that, at the time Milone actually opened the screen door, Richmond was directly in front of it.

9

of Fourth Amendment analysis is reasonableness, *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 66 (1992), and here the officers acted reasonably. The discovery of the gun was lawful and Richmond's motion to suppress should be denied.

**IT IS THEREFORE RECOMMENDED** that Richmond's motion to suppress be **denied.**

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2) whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 6th day of April, 2017.

WILLIAM E. DUFFIN
U.S. Magistrate Judge